Kimberly TUCKER *v.* James SULLIVAN

91-274                                                  821 S.W.2d 470

Supreme Court of Arkansas
Opinion delivered December 23, 1991

*Gary Eubanks and Associates*, by: *William Gary Holt*, for appellant.

*Matthews, Sanders, Liles & Sayes*, by: *Marci Talbot Liles*, for appellee.

JACK HOLT, JR., Chief Justice. This is a tort case, certified to us from the court of appeals, in which we are faced with differentiating between the status of one who is an "invitee" and one who is merely a "licensee."

On July 4, 1989, the appellant, Kimberly Tucker, was severely burned in an accident at the home of her fiance, James Sullivan, the appellee. Ms. Tucker had been residing with Mr. Sullivan since mid-May of that year. Ms. Tucker alleged that as she was washing and drying clothes, she kicked over a gas can, spilling gasoline on her jeans. Realizing what she had done, she decided to go and change; before doing so, however, she started the dryer. Ms. Tucker failed to realize the dryer was a gas dryer, which had an open flame near her feet. The guard plate had been removed. The gasoline ignited, causing severe injuries.

Ms. Tucker filed suit against Mr. Sullivan, alleging he failed to use ordinary care to maintain the premises in a reasonably safe condition, and that he knew of the danger caused by the proximity of the gasoline to the unguarded gas dryer, but failed to warn her.

Mr. Sullivan moved for partial summary judgment, asking the trial court to declare that, at the time of the accident, Ms. Tucker was a licensee on the premises. Mr. Sullivan's theory was that Ms. Tucker was either a tenant on the premises, since she paid bills and living expenses, or a social guest, and, under either classification, she would be deemed a licensee, rather than an invitee, under Arkansas law.

The trial court granted Mr. Sullivan's motion, finding that since Ms. Tucker's living arrangement with Mr. Sullivan was for social purposes, she could not be considered an invitee. This holding resulted in the dismissal of Ms. Tucker's ordinary

negligence claim since a landowner owes only a duty to refrain from injuring a licensee through wanton and willful conduct. The trial court found, as a matter of law, that Mr. Sullivan's conduct did not rise to this level. The parties proceeded to trial on the issue of Mr. Sullivan's duty to warn Ms. Tucker and the jury was instructed on this issue in accordance with the duty owed a licensee. A verdict was returned in favor of Mr. Sullivan.

Ms. Tucker now appeals, claiming the trial court erred in granting Mr. Sullivan's motion for partial summary judgment and in instructing the jury that she was a licensee as a matter of law. We affirm.

In considering Mr. Sullivan's motion for pretrial summary judgment, the trial court had before it briefs from both parties, the pleadings, and Ms. Tucker's deposition. Summary judgment, like a mistrial, is an extreme remedy, and should only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Morris* v. *Valley Forge Ins. Co.*, 305 Ark. 25, 805 S.W.2d 948 (1991).

The facts before trial were essentially undisputed. Ms. Tucker explained in her deposition that she met Mr. Sullivan at the Day's Inn Hotel, where Mr. Sullivan was working as a security guard. At the time, Ms. Tucker was receiving psychiatric treatment and was on leave from a North Little Rock hospital. She and Mr. Sullivan developed a friendship and he visited her in the hospital. Ms. Tucker stated that, following her discharge, "[Mr. Sullivan] asked me to live with him if I didn't have anywhere else to live. But he did invite me to come into his home."

Ms. Tucker subsequently moved in with Mr. Sullivan in May, 1989, and the two became engaged to be married. Ms. Tucker testified Mr. Sullivan quit his job soon after she moved in and that she paid all of their living expenses, including the house payment and utilities. Mr. Sullivan also stated Ms. Tucker paid all of the living expenses, in his motion for partial summary judgment.

Ms. Tucker argues that because her living arrangement with Mr. Sullivan inured to his benefit, she should be considered an invitee. She cites the court to one of the alternative portions of AMI 1106, which recites the distinction between "licensee" and

"invitee." "A licensee is a person who goes upon the premises of another with the consent of the owner for his own purposes and *not for the mutual benefit of himself and the owner.*" (Emphasis added.) The "mutual benefit" language is included as part of the definition of "invitee." The question is whether we should extend the meaning of "mutual benefit", in classifying a person as an invitee, to include situations in which the primary purpose of the "invitation" is social. The trial court refused to do so and we agree.

■ Although we have not previously been confronted with a factual situation of this nature, we have cited, with approval, Dean Prosser's definition of an invitee as "one induced to come onto property for the business benefit of the possessor." *Kay* v. *Kay*, 306 Ark. 322, 812 S.W.2d 685 (1991); *Coleman* v. *United Fence Co.*, 282 Ark. 344, 668 S.W.2d 536 (1984).

Other courts and scholars, in conferring upon a visitor the status of "invitee," have also looked to the "business" relationship between the possessor and the visitor. "One entering premises on invitation does not enjoy the status of invitee unless the entry is made in connection with the business or purposes of the owner. . . If the invitation is purely for the benefit, convenience or pleasure of the one invited, he is a licensee. . . and not an invitee." 65 C.J.S. *Negligence* § 63 (41) (1966). In accord, is 62 Am. Jur. 2d *Premises Liability* §91 (1990): "[A] visitor is no more than a licensee where he enters the premises of another, not in response to any *inducement* offered by the owner or occupant, or for a purpose having some connection with a business actually carried on there by the occupant, but for his own mere pleasure, convenience, or benefit." (Emphasis added.)

This interpretation is reflected in Restatement (Second) of Torts §332 (1965), which defines invitees thusly:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly con-nected with business dealings with the possessor of the

land.

Ms. Tucker, however, points to comment i of this section, which states: "A member of the possessor's family, although ordinarily a bare licensee is a business visitor if he pays board or gives other valuable consideration for his residence on the possessor's land." This statement, taken alone, may justify Ms. Tucker's position; however, it is important, as suggested by the above-cited treatises, that we look at the *purpose* of the visit and the possessor's "invitation."

First, Ms. Tucker's deposition testimony raises doubt as to whether Mr. Sullivan actually "invited" her into his home, or whether he merely acquiesed to the arrangement. His words were that she could live there "if she had no place else to go." "Mere acquiescence in, or toleration of, an entry into, or use of, premises for purposes in which the owner or occupant has no beneficial interest does not give to the person so entering the status of an invitee. . ." 65 C.J.S., *supra* § 63(43). Even assuming Mr. Sullivan extended an invitation to Ms. Tucker, courts usually require a showing that the invitee's "presence on the land was, actually or apparently, desired by the defendant, generally for some purpose other than social intercourse." 62 Am. Jur. 2d, *supra*, § 89.

There is simply no evidence of a business relationship between the parties, nor is there evidence that Mr. Sullivan and Ms. Tucker contemplated anything other than a social arrangement when Ms. Tucker moved into the home. The fact that she began paying living expenses was merely incidental to the romantic relationship, and there is no indication that she was under any obligation to do so. To hold that Ms. Tucker was actually an invitee, rather than a licensee as would be any normal member of a household, would require us to so hold in every situation involving live-in lovers and, perhaps even, spouses.

In sum, the trial court was correct in granting summary judgment on this issue.

At trial, the evidence varied in that Mr. Sullivan testified Ms. Tucker did not pay any bills whatsover. He testified she bought a few things for his daughter, Lee Ann, who verified this fact and who stated also that Ms. Tucker paid "some bills."

Otherwise, the evidence was substantially the same.

Consistent with its earlier ruling, the trial court properly instructed the jury Ms. Tucker was a licensee as a matter of law, and as to the duty owed a licensee by Mr. Sullivan under AMI 1103. That instruction states:

> An owner of property owes a licensee no duty until his presence on the premises is known or reasonably should be known. Then the owner owes the licensee only a duty not to cause him injury by willful or wanton conduct. If, however, the owner knows or reasonably should know that a licensee is in a position of danger, he is under a duty to use ordinary care to avoid injury to the licensee. But the owner does not owe the licensee a duty to exercise ordinary care if the danger is or should be open and obvious to the licensee.

We hold this ruling, too, was correct. Whether Ms. Tucker paid some or all of the bills is irrelevant to our decision, here, since the focus of our holding is the fact that the purpose of the invitation and visit was for her social convenience, which made her a licensee.

Affirmed.