FAYETTEVILLE DIAGNOSTIC CLINIC, LTD. *v.*
Dyanna TURNER

CA 00-105                                    29 S.W.3d 773

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered October 25, 2000

*Bassett Law Firm*, by: *Curtis L. Nebben* and *Vince Chadwick*, for appellant.

*Harry McDermott*, for appellee.

WENDELL L. GRIFFEN, Judge. This slip-and-fall case arises out of an injury Dyanna Turner, appellee, sustained while on the premises of appellant, Fayetteville Diagnostic Clinic

(FDC), on December 18, 1995. Turner sued FDC in tort to recover damages. At the close of a one-day trial, the jury found FDC negligent and returned a $48,703 judgment. FDC then filed a motion for judgment notwithstanding the verdict, a motion for remittitur, and a motion for a new trial, all of which were denied by order of the circuit judge. FDC now argues that there was insufficient evidence to support the verdict. FDC also argues that the amount of the award is contrary to the preponderance of the evidence. We hold that the evidence is insufficient to sustain the jury's verdict, and reverse and remand.

On December 18, 1995, Turner went to FDC for a scheduled appointment with Dr. Britt Mahan. While walking in the hallway toward the elevator, Turner fell. After her fall, Turner was placed in a wheelchair and taken to see Dr. Mahan. Dr. Mahan took an x-ray of Turner's knee and sent her to Dr. Tom Patrick Coker, an orthopaedic specialist located on the same campus as FDC. Dr. Coker placed appellee's knee in a velcro cast and gave her crutches. He treated her injury conservatively, and released her from treatment after four months.

Following Dr. Coker's release, Turner sought treatment from a pain psychologist. She returned to Dr. Coker in November 1996, and complained of aching, swelling, and burning. However, Turner's treatment from Dr. Coker was not successful. Turner went without treatment from November 1996 until September of 1997. At that time, she went to see Dr. Ken Rosenzweig. Turner told Dr. Rosenzweig that she had continuously experienced knee pain since her December 18, 1995, fall. Dr. Rosenzweig operated on her knee on October 17, 1997, and diagnosed her condition as severe patellofemoral syndrome, torn cartilage, and a mild amount of inflammation of the lining of the joint. As a result, Dr. Rosenzweig smoothed the rough edges and surfaces inside appellee's knee joint, removed torn cartilage, and cut a ligament that was holding down her kneecap too tight.

Turner then filed the instant cause of action. At the trial Turner testified that she injured her knee at FDC while walking toward the elevator. She stated that she was walking past the women's bathroom when she slipped and fell on water that came from beneath the bathroom door. She also testified that although she did not see the water on the floor when she fell, she saw the

water on the floor after she fell, and that no warning signs were posted indicating the area was wet. According to Turner, several people saw her fall, and she remained on the floor for eight to ten minutes. Turner told the jury that after she fell, employees of FDC came up to her and helped her into a wheelchair. Once in the wheelchair, Turner stated that a doctor wheeled her to Dr. Mahan's office. Turner testified that Dr. Mahan told her that he was aware of the slippery condition around the bathroom, apologized to her, and stated that the clinic would take full responsibility for everything.

Amy Cruise, Turner's niece, testified that she and a friend gave Turner a ride to the clinic. Cruise also testified that after she visited her obstetrician, who was located in the same medical complex, she walked over to FDC to see if Turner was finished. Cruise testified that she saw her aunt was on the floor in front of the women's bathroom, and saw water on the floor beside her. On cross examination, Cruise admitted that she did not see her aunt fall or accompany her aunt to see Dr. Mahan.

At the close of Turner's case FDC moved for a directed verdict, arguing that Turner failed to prove that the water on the floor was the result of appellant's negligence or how long the water was on the floor. Turner responded that she presented evidence that Dr. Mahan knew the floor was slippery, apologized for the condition of the floor, and took full responsibility for it. The trial court denied the motion and commented that although Turner presented evidence that Mahan knew the floor was slippery, she failed to present any evidence that Mahan knew there was water in front of the bathroom door on the date in question.

Following denial of FDC's motion for directed verdict, the jury heard testimony from Brenda Tooley and Dr. Mahan, and rebuttal testimony from appellee. Brenda Tooley, an employee of FDC, testified that she did not see Turner fall, but was aware of the general vicinity where Turner fell. She stated she was not aware of any maintenance or plumbing work conducted around the bathroom area the months before, during or after Turner's fall. On cross examination, Tooley admitted she was not on the premises on the day Turner fell.

Dr. Mahan, an employee and shareholder of FDC, testified for FDC. Mahan told the court he was scheduled to examine Turner

for stomach problems on the date of her fall, but as a result of the fall attended to Turner's immediate injury. On direct examination, Mahan stated that he wrote in his medical report that "[Turner] did slip on our tile floor while in the bathroom." However, on cross, Mahan stated his medical report indicated that "[Turner] slipped coming from the wet outer environment," and that the report "sounds like she slipped coming in from the wet environment. She told me she slipped around the bathroom." Mahan also testified that he wrote in his medical records that as a result of Turner's fall, she sustained bruising and pain in the left knee initially, and that although Turner could bear it, she preferred sitting in a wheelchair. Mahan told the jury that although his medical report did not indicate it, the x-ray taken of Turner's kneecap showed that the kneecap was fractured. Mahan further testified that his medical report stated there was no swelling in Turner's left knee, which directly contradicted Dr. Coker's findings. The x-ray report was not included in Turner's medical chart. Dr. Mahan denied apologizing to Turner, and told the jury he had no explanation as to why there was no medical record of his conversations or contact with Turner after she returned to see him with her x-rays. He testified that he had no information or knowledge that the floor was slippery and denied that appellee told him the floor was slippery. Dr. Mahan stated that although the average doctor at FDC saw twenty patients a week, he saw seventy or eighty patients within a week, and that the only memory he had of what happened came from his medical report. He stated that even though he normally dictated information to add to the medical chart, either the dictation did not exist or the report may have been transcribed and not placed in the chart where it could be found. Mahan testified that when he told Turner he would take care of her, he meant he would take care of her medically. Finally, Mahan stated that he had no knowledge of the condition of the floor on December 18, 1995, and that he had no memory of going to the lobby area on that date.

Following the close of the evidence, FDC again moved for a directed verdict, arguing that no evidence was presented that the water on the floor was the result of FDC's negligence or that the water came from the bathroom. Counsel for Turner responded that she proved negligence because an employee of FDC was aware of the floor's condition and took responsibility for it. The court

denied the motion for directed verdict, the jury returned a verdict in favor of plaintiff for $48,703, and the trial court denied the posttrial motions previously mentioned.

■ To determine if a trial court erred in denying a motion for a directed verdict, we view the evidence in the light most favorable to the appellee. *See Fred's Stores v. Brooks*, 66 Ark. App. 38, 41, 987 S.W.2d 287, 288 (1999). Our standard of review is whether the evidence submitted to the jury is of such weight that it compels the jury to reach a conclusion without resorting to mere speculation. *See id.* at 41, 987 S.W.2d at 288.

■ Property owners owe a general duty to invitees to use ordinary care to keep their premises reasonably safe. *See Fred's Stores*, 66 Ark. App. at 41, 987 S.W.2d at 289. *Res ipsa loquitur* does not apply in slip-and-fall cases and negligence is not presumed simply because someone slips and falls, or because a slick or foreign substance results in a slip and fall. *See Mankey v. Wal-Mart Stores, Inc.*, 314 Ark. 14, 17, 858 S.W.2d 85, 87 (1993). Rather, our appellate courts have consistently held that in order to successfully prove negligence in a slip-and-fall case, the plaintiff bears the burden of showing that the property owner breached its duty of care because 1) the owner negligently placed the substance on the floor; or 2) the substance stayed on the floor for a significant period of time such that the owner knew or should have known of its existence yet failed to use ordinary care to remove it. *See Fred's Stores*, 66 Ark. App. at 41, 987 S.W.2d at 288.

■ A plaintiff fails to meet the first theory for recovery when there is no scintilla of evidence presented to a jury that shows that the defendant negligently caused a substance to appear on the floor. *See id.* at 42, 987 S.W.2d at 289. As we stated in *Fred's Stores*, "possible causes of a fall as opposed to probable causes do not constitute substantive evidence of negligence." *See id.*, 987 S.W.2d at 289.

■ To recover under the second theory of negligence, a plaintiff must show that a significant period of time lapsed between the time the substance initially appeared on the floor and the time of the slip and fall. *See Mankey*, 314 Ark. at 17, 858 S.W.2d 85. We have held that two hours is an insignificant period of time to

establish an inference of negligence. *See Fred's Stores*, 66 Ark. App. at 42, 987 S.W.2d at 289.

In *Wal-Mart Stores, Inc. v. Bernard*, 69 Ark. App. 239, 240, 10 S.W.3d 915, 916 (2000), we held that the appellee did not present substantial evidence that water on the floor of a public restroom was the result of Wal-Mart's negligence, or that the water remained on the floor for an ample amount of time such that Wal-Mart knew or should have known of the water's existence. We pointed out that no testimony was given as to how the water got on the floor or how long the water was on the floor, and noted that a conclusion by the jury that Wal-Mart negligently caused the water puddle or that a significant period of time had lapsed to put Wal-Mart on notice was sheer speculation. *See id.* at 240–41, 10 S.W.3d at 916. As a result, we reversed the lower court's decision to deny Wal-Mart's motion for a directed verdict. *See id.* at 241, 10 S.W.3d at 916.

A similar result occurred in *Fred's Stores v. Brooks,* when we held that appellee failed to present proof of a key element — the length of time a clear hair gel remained on the floor. *See Fred's Stores*, 66 Ark. App. at 42, 987 S.W.2d at 289. To demonstrate the insufficiency of appellee's evidence, we observed that no evidence was introduced as to whether the hair gel was on the floor prior to the store's opening, or whether there were foot tracks through the gel that tended to show that employees had walked through the substance and ignored the dangerous conditions it presented. *See id.* at 42, 987 S.W.2d at 289.

■ Here, FDC argues that Turner failed to present any proof showing how the water came to exist on the floor by the bathroom, or proof of how long the water remained on the floor. Turner counters that because Dr. Mahan told her he was aware that the floor was slippery she met her burden of proving that a significant lapse of time existed between the time the water initially appeared on the floor and the time of the injury, such that FDC knew or should have known that water was on the floor and should have taken steps to remove it. Turner presents a vigorous argument, but the record lacks the requisite proof necessary to successfully satisfy either of the slip-and-fall theories of negligence. There is no proof showing how the water came to reside on the hallway floor by the restroom or how long it had been there before Turner fell. Turner also testified that she had no idea how the water came to be on the

floor or how long it remained there. No evidence was presented concerning foot tracks through the water, or if the water was on the floor when the clinic opened for business.

Turner's case rests on her assertion that Dr. Mahan told her that "he knew the floor down around the bathroom was slippery." In viewing the evidence in the light most favorable to Turner, even if Dr. Mahan told Turner that the floor around the bathroom was slippery, this does not support the inference that Dr. Mahan knew that a puddle of water existed by the bathroom door. The only way the jury could have reached a decision that FDC negligently caused the water to exist on the floor, or negligently allowed the water to remain on the floor for a significant period of time was through speculation or conjecture.

■ Because the evidence is insufficient to show that the water was on the floor as a result of FDC's negligence or that the water remained there for a substantial period time to place FDC on notice of its existence, there is no need to address FDC's request for remittitur or a new trial.

As a final matter, counsel for Turner also raised the issue in Turner's reply brief that the abstract provided to this court by appellant is both misleading and insufficient. Counsel for Turner provided a certificate stating that he spent eight hours preparing a supplemental abstract and that he is normally compensated $150 an hour by his clients.

■ Rule 4-2(6) of the Arkansas Rules of the Supreme Court require an appellant to abstract the record, without comment or emphasis, and include only those parts that are vital to an under-standing to the issue(s) presented to the court. *See* Ark. Sup. Ct. R. 4-2 (a)(6). An appellee who considers the brief provided by appellant as insufficient may call this matter to the appellate court's attention and include a supplemental abstract. *See id.* at (b)(1). To seek compensation for time spent in preparing a supplemental abstract, counsel is required to submit a statement showing the cost of the supplemental abstract along with a certificate of the time spent to prepare the supplemental abstract. *See id.* Costs are awarded to correct deficiencies in the appellant's abstract, and if this court finds that the supplemental abstract is necessary to decide the issue presented on appeal, it will allow costs and fees for preparation

of the supplemental abstract. *See Hartford Fire Ins. Co. v. Carolina Cas. Ins. Co.*, 52 Ark. App. 35, 40, 914 S.W.2d 324, 327 (1996).

A careful review of the abstract prepared by FDC reveals that it does not include, among other things, Dr. Rosenzweig's objective findings of what he found wrong with Turner's knee; the fact that employees were in the area where she fell and came up to her after she fell; Turner's assertions that Dr. Mahan was not telling the truth about the extent of her injury; that Brenda Tooley testified she was not at the clinic on the day Turner fell; that Dr. Mahan is a shareholder of FDC; that Dr. Mahan testified that his standard procedure was to document conversations with patients after seeing them and that his conversation with Turner was missing from the records; that Dr. Mahan admitted his written report inferred that appellee slipped in the entrance even though appellee told him that she slipped around the bathroom; that Dr. Mahan testified his only accurate memory came from his written records; and that a nurse accompanied Dr. Mahan when he saw Turner.

■ FDC argues that the above facts are not relevant to the issue raised on appeal and therefore, failure to include them does not render its abstract insufficient or misleading. We agree that the information provided by the supplemental abstract is not necessary to our understanding the issues or our holding that Turner failed to meet her burden of proving that FDC either negligently placed the water on the floor or negligently allowed the water to remain on the floor although ample time had passed for FDC to know of the water's existence. Accordingly, we deny counsel's motion for costs.

Reversed and remanded.

BIRD, KOONCE, and STROUD, JJ., agree.

ROBBINS, C.J., and NEAL, J., dissent.

OLLY NEAL, Judge. This is an appeal from a jury verdict. When reviewing a denial of a motion for a directed verdict, this court determines whether the jury's verdict is supported by substantial evidence. *State Auto Property & Cas. Ins. v. Swaim*, 338 Ark. 49, 991 S.W.2d 55 (1999). Substantial evidence is defined as evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond mere suspicion or conjecture. *City of Little Rock v. Cameron*, 320 Ark. 444, 897 S.W.2d 562 (1995); *St.*

*Paul Fire & Marine Ins. Co. v. Brady*, 319 Ark. 301, 891 S.W.2d 351 (1995). When determining the sufficiency of the evidence, we review the evidence and *all reasonable inferences arising therefrom* in the light most favorable to the party on whose behalf judgment was entered. *Arthur v. Zearley*, 337 Ark. 125, 992 S.W.2d 67 (1999); *Union Pacific R.R. Co. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997). (Emphasis supplied.)

I do not agree that this jury verdict should be reversed, because I believe there was substantial evidence from which the jury could have inferred that Dr. Mahan, one of the owners of Fayetteville Diagnostic Clinic, was aware of the condition that caused Ms. Turner's fall and that he failed to take any corrective action.

Ms. Turner testified that Dr. Mahan told her that he knew the floor down around the bathroom was slippery and that they, meaning FDC, would take care of everything. According to Dr. Mahan, he never told Ms. Turner he was aware of the condition of the floor. It is not, however, our place to determine whom to believe. In reviewing the evidence, we do not pass upon the weight and the credibility of the evidence, as such determinations remain within the province of the jury. *Griffen v. Woodall*, 319 Ark. 383, 892 S.W.2d 451 (1995); *Hall v. Grimmett*, 318 Ark. 309, 885 S.W.2d 297 (1994). Moreover, jurors are entitled to take into the jury box their common sense and experience in the ordinary affairs of life. *Palmer v. Myklebust*, 244 Ark. 5, 424 S.W.2d 169 (1968); *Rogers v. Stillman*, 223 Ark. 779, 268 S.W.2d 614 (1954).

Given the substantial-evidence standard and reviewing the evidence and all inferences in favor of the jury's verdict, Dr. Mahan's statement is sufficient to allow the verdict to stand. To prove negligence in the instant case, the majority would require Ms. Turner to testify, "Dr. Mahan apologized to me for my fall and said, 'I know the floor down around the bathroom is slippery because water has been leaking from the bathroom. It has been for some time now.'" I do not believe the law requires such exactness in an admission. From Dr. Mahan's admission that he knew the floor down around the bathroom was slippery, the jury could have inferred that the slippery condition of the floor down around the bathroom had existed for such a length of time that the premises owner (Dr. Mahan) knew of its presence and failed to use ordinary care to correct it. *See Heigle v. Miller*, 332 Ark. 315, 965 S.W.2d 116

(1998). Furthermore, Dr. Mahan's statement that he knew the floor down around the bathroom was slippery was a reasonable basis from which the jury could have inferred Dr. Mahan knew why the floor down around the bathroom was slippery. These are entirely reasonable inferences from the evidence presented and are all that is required to meet the substantial-evidence standard. I would affirm this verdict.

ROBBINS, C.J., joins.