Maggie YOUNG *v.* The GASTRO-INTESTINAL
CENTER, INC. & Diane Brown, R.N.

CA 03-575 167 S.W.3d 180

Court of Appeals of Arkansas
Divisions I and II
Substituted Opinion on Denial of Rehearing June 23, 2004.*

*Sheila F. Campbell*; and *Polewski & Associates*, by: *John P. Polewski*, for appellant.

---

* Original opinion delivered May 12, 2004.

*Friday, Eldredge & Clark, LLP*, by: *Laura Hensley Smith* and *T. Michelle Ator*, for appellee.

JOHN F. STROUD, JR., Chief Judge. In our original opinion, *Young v. The Gastro-Intestinal Center, Inc.*, CA 03-575 (May 12, 2004), we described the duty involved in this case as one of ordinary care. Although not an issue below, it is now clear from the petition for rehearing, the responsive brief, and a re-examination of the original appeal briefs that both parties treated this case as an action governed by the Arkansas Medical Malpractice Act. Although we deny the petition for rehearing, in this substituted opinion we apply the standards set forth in that Act. The outcome is the same.

In this case, the decedent, Earnest Young, was a patient of appellee Gastro-Intestinal Center, Inc. Appellee Diane Brown is a registered nurse employed by the Center. Mr. Young refused to follow the Center's directives not to drive after being sedated for a colonoscopy, and he was killed in a one-car collision while driving home to El Dorado. Appellant, Maggie Young, his wife, individually and as executrix of the estate, filed a negligence action against the appellees. Appellees filed a motion for summary judgment, which was granted by the trial court. Appellant raises two points of appeal: 1) the trial court erred in entering judgment against appellant on the ground that defendants owed no duty to Ernest Young as a matter of law; 2) if the trial court intended to enter judgment against appellant on the basis of causation, it was error to do so. We attempted certification of this case to the Arkansas Supreme Court, and it was denied. We reverse and remand for trial.

Mr. Young arrived at the Center in Little Rock on January 29, 1999, to undergo a colonoscopy. It is undisputed that the Center had a duty to warn Mr. Young that he should not drive after the procedure because of the effects of the sedation that would be used in the colonoscopy. Neither is it disputed that the Center issued such a warning to him. In fact, Mr. Young had been at the Center just nine days earlier for a procedure that also involved a post-procedure driving prohibition. On that occasion, his wife, the appellant herein, accompanied him and was designated as his driver; however, upon reaching the parking lot, and unbeknown to anyone at the Center, Mr. Young insisted upon driving to El Dorado and did so. When he arrived at the Center on January 29, he was asked for the name of the person who would be

driving him home. He reported that a friend named Trundle Smith would pick him up after the procedure, and that name was recorded. After the procedure was performed, however, Trundle Smith did not arrive, and it became clear that Mr. Young had his own vehicle and planned to drive himself. Appellee Brown called appellant, Young's wife, and was told that no one was available to transport Mr. Young to his other appointment and then home to El Dorado. Appellee Brown attempted to get Mr. Young to wait at the Center for the designated period of time, or until someone was available to drive him. He refused to do so. Before leaving, appellee Brown asked Mr. Young to sign a form, which indicated that he understood that he was not supposed to drive and that he was leaving against medical advice. He signed the form and left to go to another medical appointment in Little Rock. After leaving the second facility, on his way home to El Dorado, he was severely injured in a one-car automobile accident and later died.

For her first point of appeal, appellant contends that "the trial court erred in granting summary judgment to appellees on the basis that they owed no duty to Ernest Young as a matter of law." We find error in the trial court's granting of summary judgment.

At the conclusion of the hearing on the motion for summary judgment, the trial judge made the following comments:

> I just feel that the courts ought to be a gatekeeper for these things. . . . I think that this is one of those cases where you've got [an impossible] burden placed on a medical provider. You've got a provider who warns this man, who knows of the danger, who either lies or for whatever reason doesn't tell the truth . . . when he goes in for the procedure, and if the medical provider can't rely on the patient at that point, . . . I don't know that there is a duty in this area and this locale that says to the doctor you're going to be responsible for a patient who lies to you. . . . I don't think you've got to hog tie a [patient] to the chair in a waiting room and make sure that . . . they're not going to run away . . . .
>
> I think you've just got to rely on the good sense of the people coming in that you're dealing with, and at conclusion, I think you're right. You've got a problem, and they knew they had a problem, and they tried to work it through sitting with him, talking with him, but at some point, you're going to violate the law if you grab a [hold] of him and stop him. . . . So, having said all of that, I think that I'd rather have the Court of Appeals or the Arkansas Supreme Court tell me that, that this duty existed in this situation to, to not rely on what

the guy told them, and to do something more than that reliance on this statement. I just think that's an unfair burden.

 The burden of proof in a medical-malpractice action is defined by statute. Arkansas Code Annotated section 16-114-206 (Supp. 2003) provides in pertinent part:

(a) In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving:

(1) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant, the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he or she practices or in a similar locality;

(2) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant that the medical care provider failed to act in accordance with that standard; and

(3) By means of expert testimony provided only by a qualified medical expert that as a proximate result thereof the injured person suffered injuries that would not otherwise have occurred.

The question of what duty, if any, is owed by one person to another is always a question of law. *Heigle v. Miller*, 332 Ark. 315, 965 S.W.2d 116 (1998).

Because this case was decided on summary judgment, the evidentiary items before the trial court consisted of pleadings, depositions, exhibits, and affidavits. Those items included a wide range of expert opinions regarding whether appellees had breached their duty of care to Mr. Young. For example, the affidavits and depositions ranged from expert opinions that appellees' conduct satisfied their duty of care, to opinions that it did not because they should have checked Mr. Young into a hotel, or should have hired a cab to drive him from Little Rock to El Dorado, or should have stood in front of his car. Yet, summary judgment was granted solely on the basis of the trial court's determination that, under the circumstances of this case, appellees owed no further duty to Mr. Young beyond the actions that they had already taken.

The center's own policies and procedures included the following pertinent portions:

**Patient Admission.** Upon arrival for a procedure previously scheduled through the attending physician's office, the patient will proceed as follows: . . . 2. Confirm and give name of responsible adult/driver. . . . If the patient's family/companion decides to leave the Center during the procedure time, the receptionist should obtain the name and expected time of their return. A phone number should be exchanged between the patient's family/driver and the Center for communication in case of an emergency or a delay. . . . Patients will not be discharged from the recovery room until accompanied by a responsible adult.

**Patient Discharge.** No patient shall be discharged from The Gastro-Intestinal Center unless he/she is accompanied by a responsible adult. This shall be included in pre-procedure instructions given to the patient and will be reaffirmed by GI Center personnel prior to procedure. If transportation is not available, the procedure shall be cancelled and rescheduled. . . . Patients should not drive for at least 8 hours after procedure.

■ Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated and that the moving party is entitled to judgment as a matter of law. *Van DeVeer v. RTJ, Inc.*, 81 Ark. App. 379, 101 S.W.3d 881 (2003). All proof must be viewed in the light most favorable to the nonmoving party, and any doubts must be resolved against the moving party. *Id.*

■ Here, the appropriate burden of proof for a medical-malpractice action is defined by statute, but differing expert opinions exist concerning whether appellant's conduct satisfied the required standard of care. Therefore, we conclude that a question of fact was created, and that it must be decided by a jury. Consequently, we find that the trial court erred in granting summary judgment.

■ With respect to appellant's second point of appeal, involving causation, we hold that the trial court did not grant summary judgment on that basis, and it is therefore not necessary to address the point. Accordingly, we reverse the grant of summary judgment and remand for trial.

Reversed and remanded.

HART, GLADWIN, GRIFFEN, CRABTREE, and BAKER, JJ., agree.