Elaine KELLEY and Marissa Kelley, by Elaine Kelley, Mother and Next Friend *v.* NATIONAL UNION FIRE INSURANCE COMPANY of Pittsburgh for the Little Rock National Airport and Floors & More, Inc.

96-999                                        937 S.W.2d 660

Supreme Court of Arkansas
Opinion delivered February 17, 1997

*Satterfield Law Firm,* by: *G. Randolph Satterfield,* for appellant.

*Wright, Lindsey & Jennings,* by: *Patrick J. Goss* and *Stephen R. Lancaster,* for appellee National Union Fire Insurance Company of Pittsburgh, Pennsylvania.

*Matthews, Sanders & Sayes,* by: *Margaret M. Newton* and *Roy Gene Sanders,* for appellee Floors & More, Inc.

ROBERT L. BROWN, Justice. This is a slip-and-fall case in which the trial court granted summary judgment in favor of appellees National Union Fire Insurance Company of Pittsburgh (NUFI) for Little Rock National Airport (Airport) and Floors & More, Inc. Because we conclude that issues of material fact remain to be decided, we reverse the summary judgment and remand the case for further proceedings.

Appellants Elaine Kelley and Marissa Kelley, by her mother and next friend, filed their complaint against the Airport alleging that injuries were suffered and damages incurred as a result of the negligence of the Airport and Floors & More. According to their

amended complaint, on July 19, 1994, Elaine Kelley was carrying her daughter, Marissa, age 11 months, after they exited an airplane at the Little Rock Airport. While walking down the main concourse, Elaine Kelley stepped onto ceramic tile. Her feet went out from under her, and she fell, causing injury to herself and to her daughter. Kelley alleged "[t]hat the ceramic tile in front of gate (six) 6 was covered in construction dust, causing the floor to become unexpectedly slippery." She further alleged that Floors & More had been performing construction work on the concourse. Kelley asserted that the Airport was negligent in failing to clean up the dust that had been on the floor for a sufficient amount of time for Airport personnel to know of its existence. She prayed for damages in the amount of $5,000 for injuries to Marissa's lip, front teeth, and gums. On her own behalf, she alleged injuries to her hip, back, leg, a tooth, and "shock to her entire nervous system" and asked for damages in excess of $50,000.

NUFI answered on behalf of the Airport and also admitted that a fall occurred but denied any negligence on the part of its insured. NUFI affirmatively pled comparative fault and filed a cross-claim against Floors & More for contribution or indemnity. Floors & More answered, and it, too, admitted that a fall had occurred but denied any negligence. It claimed that any dust on the floor was due to deficient maintenance by the Airport and affirmatively pled that the condition of the floor was an open and obvious danger. It denied NUFI's cross-claim.

Discovery ensued followed by motions for summary judgment. Floors & More moved for summary judgment on the basis that Elaine Kelley had failed to show that any alleged dust on the floor was the result of Floors & More's negligence. The company relied on Kelley's admission in her deposition that she did not personally observe dust on the floor but was informed of the dust by another passenger. Floors & More further contended that even if the dust existed, Kelley failed to prove negligence on its part because there had not been any construction in the area for four days before the accident, and the area had been swept and vacuumed since that time.

Floors & More also attached the affidavit of Dan Billingsley, the president of the company, in support of its motion. Billingsley stated under oath that his crew was last present at the airport on July 15, 1994 — four days before the accident — and on that date, the crew was laying carpet at the opposite end of the terminal from where the accident occurred. The tile crew last worked in that same area on July 8, 1994, according to Billingsley. Billingsley averred that Floors & More cleaned the area after construction on each of those days and that the Airport maintenance crew continually swept and vacuumed the construction area and the remainder of the Airport. He further stated that Floors & More did not receive any complaints or hear of any falls from July 8, 1994 to July 19, 1994.

NUFI filed its own motion for summary judgment and contended that Kelley failed in her deposition to establish either the presence of a substance on the new tile or that the substance had been on the tile for such a length of time that the defendants reasonably should have known of its presence.

In response to the two summary-judgment motions, Kelley asserted that Floors & More had admitted that there was a substance on the floor, thereby rendering summary judgment inappropriate. In addition, she submitted several items of proof with her response to establish that dust was on the tile floor and that Floors & More had routinely failed to clean around its construction site. Her proof included her own deposition; the affidavit of her sister Melinda Frint, which referred to a "gritty" substance on the tile; Floors & More's contract with the Airport where the company agreed to keep the work area and surrounding area clean; a letter from the architect to Floors & More dated February 15, 199[4], regarding cleanliness in the concourse;[1] preconstruction meeting minutes dated March 3, 1994, concerning the dust problem; a letter from the architect to Floors & More dated April 28, 1994, regarding dust in the main concourse; a photograph dated July 25, 1994, depicting a sign that said "PARDON OUR DUST While We Improve Your Airport;" a letter dated August 8, 1994, stating that tape and dirt remained in the concourse; and the

---

[1] The letter appears to erroneously cite 1993 as the year it was written.

affidavit of Little Rock Police Officer Richard Jordan, who averred that he was made aware by the other Airport patrons of the slippery condition of the new tile that was being installed.

The trial court conducted a hearing on the motions. At the conclusion of the hearing, the trial court observed that there was no evidence of what caused Kelley to fall and that for a jury to decide in her favor would be commensurate with imposing strict liability. An order of summary judgment was subsequently entered.

## I.   Summary Judgment

■ Kelley argues on appeal that the trial court erred in granting summary judgment and in concluding that there was no evidence of the cause of her accident. Our standards for reviewing summary judgments and slip-and-fall cases have been often stated. Summary judgment should be granted only when it is clear that there is no genuine issue of material fact to be litigated. *Brumley v. Naples*, 320 Ark. 310, 896 S.W.2d 860 (1995); *Hickson v. Saig*, 309 Ark. 231, 828 S.W.2d 840 (1992). The burden of proving that there is no genuine issue of material fact is upon the movant — in this case NUFI and Floors & More — and all proof submitted must be viewed in a light most favorable to the party resisting the motion. *Wyatt v. St. Paul Fire & Marine Ins. Co.*, 315 Ark. 547, 868 S.W.2d 505 (1994). Any doubts and inferences must be resolved against the moving party. *Brumley v. Naples, supra*; *Brunt v. Food 4 Less, Inc.*, 318 Ark. 427, 885 S.W.2d 894 (1994). When the movant makes a *prima facie* showing of entitlement, the respondent — here, Kelley — must meet proof with proof by showing that a genuine issue exists as to a material fact. *Sanders v. Banks*, 309 Ark. 375, 830 S.W.2d 861 (1992).

■ In the slip-and-fall context, we have held that it is not appropriate to grant summary judgment when the movant relies solely on the plaintiff's statement that she did not know where the substance came from or how long it had been on the premises. *Collyard v. American Home Assurance Co.*, 271 Ark. 228, 607 S.W.2d 666 (1980). We reasoned in *Collyard* that this is because the burden is on the moving party to show that he or she is enti-

tled to judgment and that the movant cannot shift that burden to the plaintiff to show a genuine issue of fact, when the movant initially makes no offer of proof on a controverted issue. *Id.* The movant must offer his own proof to show that reasonable minds could not differ as to the conclusions they could draw from the facts presented and that the issue is appropriately resolved as a matter of law. *See, e.g., Tyson Foods, Inc. v. Adams,* 326 Ark. 300, 930 S.W.2d 374 (1996); *Brunt v. Food 4 Less, Inc., supra.*

■ ■ Over the years, this court has frequently stated the principles that govern slip-and-fall cases. Those principles are set against the general backdrop that a property owner has a duty to exercise ordinary care to maintain the premises in a reasonably safe condition for the benefit of invitees. *See Black v. Wal-Mart Stores, Inc.,* 316 Ark. 418, 872 S.W.2d 56 (1994); *Sanders v. Banks, supra.* We have said:

> In order to prevail in a slip and fall case, the appellant must show either (1) the presence of a substance upon the premises was the result of the defendant's negligence, or (2) the substance had been on the floor for such a length of time that the appellee knew or reasonably should have known of its presence and failed to use ordinary care to remove it. *Dunklin,* 307 Ark. 12, 817 S.W.2d 873; *Safeway Stores, Inc. v. Willmon,* 289 Ark. 14, 708 S.W.2d 623 (1986); *see also* AMI Civil 3rd, 1105. The mere fact that a person slips and falls does not give rise to an inference of negligence. *J.M. Mulligan's Grille, Inc. v. Aultman,* 300 Ark. 544, 780 S.W.2d 554 (1990). Possible causes of a fall, as opposed to probable causes, do not constitute substantial evidence of negligence. *Willmon,* 289 Ark. 14, 708 S.W.2d 623.

*Brunt v. Food 4 Less, Inc.,* 318 Ark. at 430, 885 S.W.2d at 896, *quoting Derrick v. Mexico Chiquito, Inc.,* 307 Ark. 217, 819 S.W.2d 4 (1991). Mere proof that a floor is slippery will not defeat summary judgment; there must be proof of a substance on the floor such as water, grease, or wax. *See Thompson v. American Drug Stores, Inc.,* 326 Ark. 536, 932 S.W.2d 333 (1996); *Black v. Wal-Mart Stores, Inc., supra.* Moreover, to avoid summary judgment, a plaintiff must offer some proof to contravene a movant's proof, if the movant has shown that the substance was not there due to the movant's negligence and that there was no substantial interval

between the time the substance appeared on the floor and the time of the accident. *See Sanders v. Banks, supra; Moore v. Willis,* 244 Ark. 614, 426 S.W.2d 372 (1968).

## II.   Foreign Substance

We first turn to the issue of the presence of some foreign substance on the tile. Both appellees present Kelley's deposition as proof that she did not see what caused her fall. The opposing proof offered by Kelley was that she observed dust on a bystander's fingertips after her fall. The bystander was assisting Kelley after she fell and wiped the tile with her hand and showed the dust on her fingertips to Kelley. Added to this evidence was the affidavit of Kelley's sister, Melinda Frint, who averred that she and Kelley walked from concrete in the main concourse "onto a gritty tiled area" where her sister slipped and fell "on the gritty surface." Because all doubts and inferences must be resolved in favor of the nonmoving party in summary-judgment proceedings, we view Kelley's testimony and Frint's affidavit as sufficient to raise a material fact question concerning the presence of dust or dirt on the tile. *Brumley v. Naples, supra.*

## III.   Negligence

We next must address how the dust got on the tile and how long it had been there. Again, both appellees offer Kelley's deposition as proof that she did not know where the dust came from or its duration. The initial burden in summary-judgment matters, however, is on the movants, and the plaintiff's recollection of events does not constitute an offer of proof on a controverted issue. *See Collyard v. American Home Assurance Co., supra.* The only other proof presented by both NUFI and Floors & More that they were not responsible for the alleged dust on the tile is the affidavit of Dan Billingsley. That affidavit included a statement that Floors & More cleaned up after each construction day and the Airport maintenance crew continually swept and vacuumed the construction area and the terminal.

With respect to NUFI, we question whether the averment by Billingsley, as president of Floors & More, is sufficient for

NUFI to shift the burden of proof to Kelley to present evidence disproving that the tile was clean. But, furthermore, it appears that an issue of material fact remains to be resolved on whether either party was keeping the concourse clear of construction dust. For example, the preconstruction minutes of a meeting on March 3, 1994, involving the architect, airline representatives, Airport officials, and Dan Billingsley reflect that there was discussion about "a lot of dust" as a result of the tile removal, and it was necessary, as a result, to remove large areas of tile at night. Remedies for containing the dust such as dust barriers were discussed. This meeting was preceded by a letter from architect Hrand Du Valian to Dan Billingsley dated February 15, 199[4], where Du Valian complained that Floors & More was not keeping the concourse clean as required by contract. Then on April 28, 1994, Du Valian wrote another letter to Dan Billingsley where he referred to a complaint filed with the Airport and the State Health Department "regarding the dust which your firm allowed to openly filter through the concourse" and added:

> As we have discussed *on numerous occasions*, during two precon-struction meetings, via phone conversations and letters (not to mention warnings by the airport administration and maintenance departments) as stated on Sheet T-1 of the contract documents ". . . contractor shall nightly erect an airtight dust partition of plastic sheeting . . .". I do not know how to state this more plainly. This is a *very* important issue. To avoid a litigious situa-tion (that as you can now plainly understand, may very well arise because of the non-compliance on the part of your firm to all of the requirements of the contract documents) please make a renewed effort and inform each new worker that compliance with the contract documents is a *must*. (Italics ours.)

Next, after the Kelley accident, Du Valian wrote the follow-ing to Dan Billingsley on August 8, 1994:

> Bill Flowers [acting airport manager] indicated to me yesterday, that he was very disturbed by the condition of the tile at the concourse. *For a long time* there has been tape, and dirt from construction on the tile throughout the concourse. This creates a very dirty atmosphere for airport patrons. He has requested that this be cleaned by Monday 8/15/94. If this is not taken care on (sic) by your crews by Monday morning he will have his mainte-

nance department clean the floor and charge you for their time. Please notify me how you want this issue resolved. (Emphasis ours.)

■ There obviously was a history of a dust problem at the Airport in conjunction with the replacement of the concourse tile. Rule 406(a) of the Arkansas Rules of Evidence provides:

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

In light of evidence that the Airport was relying on Floors & More to clean up the dust and that Floors & More routinely failed to rid the concourse of dust and dirt, we conclude that a fact question has been raised under Ark. R. Evid. 406(a) as to whether the tile was swept and vacuumed on the date of the accident — July 19, 1994. *See* 1 McCormick on Evidence § 195, at 828-30 (4th ed. 1992).

■ Because there are material fact questions which need to be resolved concerning the presence of dust on the tile and the failure of the appellees to clean the premises, we reverse the summary judgment and remand this matter to the trial court for further proceedings.

Reversed and remanded.