Harold THOMPSON and Donna Thompson *v.* CITY of SILOAM SPRINGS, Arkansas

97-626                                                      969 S.W.2d 639

Supreme Court of Arkansas
Opinion delivered May 28, 1998

*Woodruff Law Firm*, by: *Marsha C. Woodruff*, for appellants.

*Harrington, Miller & Neihouse, P.A.*, by: *Stephen D. Stitt, Wayne Krug*, and *William F. Mertins, Jr.*, for appellee/cross-appellant.

W.H. "DUB" ARNOLD, Chief Justice. The appellants, Harold Thompson and Donna Jean Thompson, as husband and wife, filed a suit for inverse condemnation against the appellee, City of Siloam Springs. The Thompsons owned and operated a sale barn that caught fire on July 10, 1994. In their complaint and amended complaint, the Thompsons alleged that the Siloam Springs Fire Department breached its duty to respond quickly and appropriately to the fire and intentionally pulled down the walls of the barn's office, which resulted in a major portion of the structure being destroyed. The Thompsons further alleged that the City arbitrarily and without just cause refused to grant their request for a permit to rebuild and rezone the property and continue their livestock auction business. According to the Thompsons, these actions amounted to a "taking" of their property in violation of Ark. Const. art. 2, § 22. In their prayer for relief, the Thompsons sought damages against the City, including punitive damages, in the amount of $1,600,000.00. They appeal an order of the Benton County Circuit Court granting summary judgment in the City's favor. The City cross appeals the denial of their request for attorney's fees. We affirm.

The facts as set out in the Thompsons' complaint and amended complaint are as follows. Prior to the July 10, 1994, fire, the Thompsons had owned and operated their livestock auction business at 1007 West Tulsa Street for some eighteen years. During this time, the City's zoning board rezoned the property, but permitted the Thompsons to continue to operate the sale barn as a nonconforming use. In late 1993 and early 1994, the Thompsons had negotiated with the City to sell their 6.74 acres and the sale barn. Five days before the fire, the city directors had discussed the proposed purchase of the sale barn at their board meeting. On the night of the fire, emergency telephone calls were made to the fire department at approximately 9:00 p.m.; however, no fire trucks arrived at the scene for more than twenty minutes, and no water was put on the fire for almost thirty minutes, even though the fire department was located only twelve blocks away. During the final stages of the fire, the firefighters pulled the walls of the office portion of the sale barn to the ground.

Following the fire, the City's zoning board refused to grant the Thompsons' request for a building permit to rebuild or to rezone the sale-barn property. In addition to their claims for inverse condemnation, negligence, and "intentional acts and omissions," the Thompsons claimed, in their original complaint filed in Benton County Circuit Court, that the City's acts and omissions violated their civil rights under 41 U.S.C. § 1983 and their rights under the Fourth and Fourteenth Amendments to the United States Constitution. On the City's motion, the case was moved to the United States District Court for the Western District of Arkansas. After the Thompsons amended their complaint removing the federal causes of action, both parties agreed to remove the case to state court.

Following discovery, the City filed a motion for summary judgment. On February 19, 1997, the trial court entered an order granting the motion. Specifically, the trial court found that Ark. Code Ann. § 21-9-301 (Repl. 1996) barred the Thompsons' negligence claim due to the City's lack of liability insurance. Regarding their inverse-condemnation claim, the trial court concluded that the Thompsons were required to prove an intentional taking by the City amounting to a substantial deprivation for a public

benefit. The Thompsons' proof, according to the trial court, did not include evidence of repeated conduct or a history of action or inaction on the part of the fire department or other City officials. The trial court further found that the City was not liable for the firefighters' alleged acts of "intentionally letting the Thompsons' property burn down, causing it to burn down, knocking walls in," absent some proof that the firefighters were acting pursuant to an order or written or implied City policy or directive. It was the trial court's conclusion that the Thompsons failed to meet the City's proof with their own proof that such a policy existed, as the City presented affidavits of the Fire Chief and City Administrator denying the existence of such a policy to take or devalue the Thompsons' property. Furthermore, the trial court determined that the Thompsons had failed to show a substantial deprivation, as they had failed to appeal the zoning commission's denial of their application to rebuild. Finally, the trial court found that the Thompsons failed to prove that their alleged taking resulted in a public benefit, concluding that "[t]he general feeling that the City would be better and more beautiful without a sale barn operating in the middle is not material or real enough to go to the jury." The Thompsons now appeal this order.

### Direct appeal — Summary judgment

The Thompsons do not challenge the trial court's ruling that their negligence claim against the City is barred by § 21-9-301. Rather, they claim that fact questions exist regarding whether the City's intentional acts and omissions amounted to a taking of their property. Particularly, the Thompsons claim that fact questions exist with respect to (1) whether they negotiated with the City for the sale of their property prior to the date of the fire; (2) whether there was an intentional delay in the fire department's response to 911 calls; and (3) whether the fire department attempted to save the building. The Thompsons further assert that the trial court improperly decided fact questions and mixed questions of law and fact when making its determination that no taking occurred.

We have often stated the guidelines under which we review the granting of motions for summary judgment:

Summary judgment should be granted only when it is clear that there is no genuine issue of material fact to be litigated. *Kelley v. National Union Fire Ins. Co.*, 327 Ark. 329, 937 S.W.2d 660 (1997). A summary judgment should not be granted when reasonable minds could differ as to the conclusions they could draw from the facts presented. *Brunt v. Food 4 Less, Inc.*, 318 Ark. 427, 885 S.W.2d 894 (1994). The burden of proving there is no genuine issue of material fact is upon the movant, and all proof submitted must be viewed favorably to the party resisting the motion. *Wyatt v. St. Paul Fire & Marine Ins.*, 315 Ark. 547, 868 S.W.2d 505 (1994). Any doubts and inferences must be resolved against the moving party. *Kelley v. National Union Fire Ins. Co.*, 327 Ark. 329, 937 S.W.2d 660 (1997). When the movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing a genuine issue of material fact. *Brunt v. Food 4 Less, Inc.*, 318 Ark. 427, 885 S.W.2d 894 (1994).

*Wilson v. J. Wade Quinn Co.*, 330 Ark. 306, 308, 952 S.W.2d 167 (1997). We have further emphasized that allegations in a complaint are not proof for summary judgment purposes. *Country Corner Food & Drug, Inc. v. First State Bank and Trust*, 332 Ark. 645, 966 S.W.2d 894 (1998); *Wheeler v. Phillips Development Corp.*, 329 Ark. 354, 947 S.W.2d 380 (1997); *Porter v. Harshfield*, 329 Ark. 130, 948 S.W.2d 83 (1997); *Guthrie v. Kemp*, 303 Ark. 74, 793 S.W.2d 782 (1990).

■ Regarding the Thompsons' claim for inverse condemnation, we discussed this cause of action in *National By-Products v. City of Little Rock*, 323 Ark. 619, 916 S.W.2d 745 (1996):

Article 2, section 22 of the Arkansas Constitution provides that "[t]he right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor." We have interpreted this provision to require compensation for a taking when a municipality acts in a manner which substantially diminishes the value of a landowner's land, and its actions are shown to be intentional. *Robinson v. City of Ashdown*, 301 Ark. 226, 783 S.W.2d 53 (1990). A conspectus of the law on inverse condemnation is as follows:

As originally conceived and developed, the concept of inverse condemnation was a remedy for physical taking of

private property without following eminent domain procedures. "Fault" has nothing to do with eminent domain, and it is not bare trespass or negligence which results in inverse condemnation but something which amounts to a de facto or common law "taking." J. Sackman & P. Rohan, *Nichols on Eminent Domain*, 8.1[4] (Rev. 3d ed. 1985, Supp. 1987). Inverse condemnation is thus a cause of action against a governmental defendant to recover the value of property which has been taken in fact by a governmental entity although not through eminent domain procedures.

323 Ark. at 624, *quoting Robinson v. City of Ashdown*, 301 Ark. 226, 230, 783 S.W.2d 53 (1990).

██ ██ In support of their argument, the Thompsons cite the *Robinson* case, which involved the City of Ashdown's prolonged failure to remedy a sewage overflow onto the Robinson's property. Concluding that the continuing trespass or nuisance onto the Robinson's land continued long after the City of Ashdown was put on notice of it, we held that the Robinsons had stated a case for inverse condemnation under Ark. Const. art. 2, § 22:

> We want it to be clear that our holding here is based on Ark. Const. art. 2, § 22, which provides, "The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor." When a municipality acts in a manner which substantially diminishes the value of a landowner's land, and its actions are shown to be intentional, it cannot escape its constitutional obligation to compensate for a taking of property on the basis of its immunity from tort action.

While we have not provided a definitive statement of what constitutes a taking, we have noted the following definition in *City of Fayetteville v. Stanberry*, 305 Ark. 210, 214, 807 S.W.2d 26 (1991):

> A taking is described as damage that will substantially oust the owner and deprive him of all beneficial enjoyment thereof; will substantially abridge the owner's rights to such an extent as to deprive him of his right; will be an interference with or disturbance of property rights resulting in injuries which are not merely consequential or incidental; a taking is determined by the

character of the invasion and not by the amount of damage resulting from it, as long as the damage is substantial.

*See* 26 AM. JUR. 2D *Eminent Domain* 157, *What Constitutes a Taking* (and cases cited therein) (1966 and Supp. 1990).

■ As the trial court correctly concluded, the Thompsons' proof does not support their claim for inverse condemnation. While the Thompsons offered proof that they entered into negotiations with the City for the sale of their property prior to the fire, we have held that mere plotting or planning in anticipation of an improvement does not constitute a taking where the government has not imposed a restraint on the use of the property. *National By-Products v. City of Little Rock*, 323 Ark. at 626. Although the Thompsons submitted proof, through the affidavits of Jeff Rich, April Rich, Larry Anderson, Darren Holland, and Deputy Fire Chief David Williams, and the fire department's records, that there was a delay in the response to the telephone calls reporting the fire, this evidence, when taken as true, does not demonstrate that the firefighters acted with malice or intentionally failed in their duties to attempt to extinguish the fire. While these facts would present a jury question on the issue of negligence, the Thompsons have not appealed the trial court's ruling that a claim of negligence is barred by §21-9-301.

■ The Thompsons further claim that there is a fact question as to whether the fire department attempted to save the building. In support of this claim, the Thompsons refer to Mr. Anderson's affidavit, in which he claims that the firefighters did not spray the roof of the barn until it had already fallen. They also point to Mr. Thompson's affidavit, in which he asserts that, when the fire "rekindled" the following morning, the firefighter who arrived at the scene was "upset" and stated, "Let the damned thing burn down," as well as City Administrator Mark Latham's statement that "the City has taken [Mr. Thompson] out of business." The Thompsons further question why their check writer came into the possession of the fire department and why firefighters tore down the walls of the building while fighting the blaze. None of this evidence, however, when viewed in a light most favorable to the Thompsons, supports a claim that the City damaged the Thompson's barn in such a way as to substantially oust them and

deprive them of all beneficial enjoyment of their property. Mr. Thompson's affidavit, in which he states that an investigation concluded that the fire was caused by an electrical problem in the thermostat, was controverted. Unlike *Robinson v. City of Ashdown, supra,* in which the plaintiffs there demonstrated that the City's failure to remedy a prolonged sewage flooding problem substantially reduced the value of their home, there was evidence in the present case that the Thompsons continue to use the property and have operated a lumber sales business on the site since May of 1995. *See City of Fort Smith v. Anderson,* 241 Ark. 824, 410 S.W.2d 597 (1967) (reversing a jury award resulting from a single sewage overflow into the landowners' home that was a onetime occurrence.)

Finally, the Thompsons have failed to offer proof that the City received some public benefit. *See Barrett v. Poinsett County,* 306 Ark. 270, 811 S.W.2d 324 (1991). While the Thompsons claim that City regarded their barn as a nuisance, the uncontroverted affidavits of both City Administrator Mark Latham and Mayor Moose Van Poucke demonstrated that the City received no such benefit. Simply put, the Thompsons have not shown that the City ever took possession of their property. *See National By-Products v. City of Little Rock, supra.* Moreover, the decision to deny the Thompsons a permit to rebuild the sale barn was that of the City's zoning commission. The Thompsons failed to exhaust their administrative remedies when they chose not to appeal the commission's decision. *See Regional Health Care Facilities, Inc. v. Rose Care,* Inc., 322 Ark. 780, 912 S.W.2d 406 (1995). We conclude that, on the proof submitted, any damages sustained by the Thompsons were insufficient to support an action for inverse condemnation. When viewing the proof submitted in a light most favorable to the Thompsons, we cannot say that the City's actions constituted a taking of the Thompsons' property.

*Cross appeal — Denial of attorney's fees*

On cross-appeal, the City claims that the trial court erred in failing to award it attorney's fees. As a general rule, attorney's fees are not allowed in Arkansas unless expressly authorized by statute. *Wynn v. Remet,* 321 Ark. 227, 902 S.W.2d 213 (1995). However, in any civil action in which the court having

jurisdiction finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party or his attorney, the court may award an attorney's fee in an amount not to exceed $5,000, or ten percent of the amount in controversy. *Id.*

The relevant statute, Ark. Code Ann. §16-22-309 (Repl. 1994), provides in pertinent part:

> (a)(1) In any civil action in which the court having jurisdiction finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party or his attorney, the court shall award an attorney's fee in an amount not to exceed five thousand dollars ($5,000), or ten percent (10%) of the amount in controversy, whichever is less, to the prevailing party unless a voluntary dismissal is filed or the pleadings are amended as to any nonjusticiable issue within a reasonable time after the attorney or party filing the dismissal or the amended pleadings knew, or reasonably should have known, that he would not prevail.
>
> \*\*\*
>
> (b) In order to find an action, claim, setoff, counterclaim, or defense to be lacking a justiciable issue of law or fact, the court must find that the action, claim, setoff, counterclaim, or defense was commenced, used, or continued in bad faith solely for purposes of harassing or maliciously injuring another or delaying adjudication without just cause or that the party or the party's attorney knew, or should have known, that the action, claim, setoff, counterclaim, or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law.

From our review of the record, we cannot say that the trial court abused its discretion in disallowing fees under this standard. While the Thompsons' counsel was in error in asserting that the facts supported a claim for inverse condemnation, there was nothing to indicate that this argument was made in bad faith or that it was made solely for the purpose of harassing or of maliciously injuring the City. *See e.g., Lawson v. Sipple*, 319 Ark. 543, 893 S.W.2d 757 (1995). Under these circumstances, we affirm the trial court's denial of the City's request for attorney's fees.

Affirmed.