2009 Ark. App. 657

**James HENDRIX, Appellant,**

**v.**

**David STOBAUGH d/b/a Stoby's of Russellville, Appellee.**

**No. CA 09–71.**

Court of Appeals of Arkansas.

Oct. 7, 2009.

---

Busfield & Dugger, P.A., by Julia L. Busfield, Little Rock, for appellant.

Watts, Donovan & Tilley, P.A., by Jim Tilley and Staci Dumas Carson, Little Rock, for appellee.

RITA W. GRUBER, Judge.

James Hendrix appeals from an order of the Pope County Circuit Court granting appellee David Stobaugh's motion for summary judgment and dismissing Mr. Hendrix's complaint for personal injuries that he sustained at Stoby's, Mr. Stobaugh's restaurant in Russellville. Because Mr. Hendrix failed to present evidence that a genuine issue of material fact existed regarding Stoby's alleged negligence, we affirm the circuit court's order.[1]

Mr. Hendrix alleged in his complaint that he and his wife went to Stoby's to eat breakfast on February 18, 2006. Snow had fallen in the area the night before, but the walkways and parking lot of the restaurant were clear. Mr. Hendrix alleged that, upon entering the restaurant, he fell in standing water that had been allowed to accumulate and the water on the floor was of such a volume that it had soaked through a doormat. He claimed that Stoby's was negligent in "allowing significant amount of water to be left upon the floor, causing a dangerous and slick condition as a result of lack of due care." He also alleged that Stoby's "knew or should have

---

1. The appellee in this case is David Stobaugh D/B/A Stoby's of Russellville. We will refer to appellee herein as Stoby's.

known of the presence of the volume of water on the floor and failed to adequately maintain the premises." Finally, Mr. Hendrix alleged that Stoby's "failed to warn" Mr. Hendrix of the dangerous condition. He claimed that he sustained damages in excess of $75,000 for injuries to his prosthetic hip requiring surgical intervention, other medical expenses, pain and suffering, and loss of income.

Stoby's filed a motion for summary judgment, contending that it took all reasonable precautions so that any water on the floor of the restaurant was not a result of Stoby's negligence. In the alternative, Stoby's contended that any water on the floor had not been present for such a length of time that Stoby's should have known of its presence and removed it. Stoby's attached relevant portions of the depositions of Mr. Hendrix and his wife, Tanya Hendrix; Heather Frensko, an employee working the day of the incident; Patty Stobaugh, Mr. Stobaugh's wife; and Mr. Stobaugh.

Mr. Hendrix testified in his deposition that he did not know exactly when he got up or went to breakfast at Stoby's that morning but that he had plans later in the morning to unload a truck in Dardanelle. He said that it had snowed the night before and, while the streets were still slushy, it was melting and he had no trouble getting around. He also said that the walk in front of Stoby's had salt residue and was extremely well cleared and well cared for. He explained that there was a door leading to an entryway and then a set of double doors between the entryway and the restaurant. He said that he fell on his first step inside the front door to the entryway. He thought he slipped on the wood threshold or the area between the threshold and a mat laid on the ground. He said that he knew it was wet because there was a six-inch wet patch on his shoulder and a small wet spot on his jeans. He said that the mat was wet, although he did not know how wet. It was not clear from his testimony whether his clothes got wet from the floor or the mat.

Mrs. Hendrix testified that the steps leading to the restaurant had been salted and were clear and well prepared. She said there was a rug, which is always there, immediately inside the front door. She did not remember whether it was wet when she came in, but she said she noticed it was wet when they left after eating breakfast. She also testified that she did not remember seeing any caution signs when she went in but that she was not looking for anything, although she did see a yellow "caution when wet sign" in the cash-register area when she left after eating breakfast. She said she did not see any signs in the entryway when she left. She did not notice whether her husband's clothes were damp or wet after he fell.

Mrs. Stobaugh testified that she opened the restaurant that morning between 5:00 a.m. and 6:00 a.m. and put out the wet-floor signs: one in the entryway and one near the cash register in the restaurant. She also testified that she was not aware of any customers having slipped or fallen on the floors of the restaurant before.

Ms. Frensko testified that she came in at about 8:00 a.m. She said that she put out the rugs when she got there: one in the entryway and one inside the restaurant. She stated that, when she put the rug down, the entryway floor was "all dry." She said she also put down the wet-floor signs: one in the entryway and one in the main restaurant area near the pie case.

Mr. Stobaugh testified that one of his primary responsibilities when he spends the night in Russellville the night before a snow day is to shovel and take care of the hazards involving snow. He said that he is "ten times more aware of the conditions of

the floor and the safety of the floor when it's just snowing versus when it's raining, for instance, just because it is unusual and it is more hazardous." He said Stoby's typically had "much" water tracked into the entryway.

Mr. Hendrix attached relevant portions of the same depositions to his response to Stoby's motion for summary judgment. He argued that there was evidence that Stoby's knew that water would accumulate on the floor, that it took no action to monitor the water and mop it up, and that a disputed issue of material fact existed as to whether the warning signs were out prior to his injuries. He attached the part of Mrs. Stobaugh's deposition in which she said that the employee who comes in before 6:00 a.m. is responsible for putting the mats down in the entryway. He also noted that Mrs. Stobaugh testified that it was a busy day. Finally, he attached Mrs. Stobaugh's testimony in which she said that she did not mop the mats or do anything to them, but that if the mats had gotten extremely wet she would have gotten the wet-dry vac out and dried them.

In the part of Ms. Frensko's deposition attached to Mr. Hendrix's response, Ms. Frensko testified that she put the wet-floor signs out when she arrived at 8:00, that she did not remember whether she cleaned the rug between 8:00 and the time she went to lunch, and that the wet-floor signs were still out when she came back from lunch.

Mr. Hendrix attached the part of his own deposition in which he testified that he knows there was a wet-floor sign in the cash-register area when he left, but that he did not remember a wet-floor sign in either the entryway or the cash-register area when he arrived. He said it could have been there but that he fell immediately upon his first step inside and he was hurting.

Finally, Mr. Hendrix attached Mr. Stobaugh's testimony in which Mr. Stobaugh said that he did not independently remember whether there were signs out that morning. He testified that he was concerned with clearing the snow outside and that he was never at the restaurant to take care of the floors. He said that it was rare for him to be at the store on a Saturday and that he was generally not in the stores at all, but in the office. He was there to shovel and take care of the hazards involving snow. He said Stoby's typically had much water tracked into the entryway because you have people with wet feet. "And when you're that busy, it's just a fact of life."

Our standard of review for summary-judgment cases is clear:

> Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable minds might reach different conclusions from those undisputed facts. On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material question of fact unanswered. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party.

*Jackson v. Sparks Reg'l Med. Ctr.*, 375 Ark. 533, 294 S.W.3d 1 (2009).

Arkansas has well-established law regarding slip-and-fall cases. A property owner has a duty to exercise ordinary care to maintain its premises in a reasonably safe condition for the benefit of an invitee. *Cowan v. Ellison Enters., Inc.*, 93 Ark.App. 135, 143, 217 S.W.3d 175, 180 (2005); *Kelley v. Nat'l Union Fire Ins. Co.*, 327 Ark. 329, 937 S.W.2d 660 (1997). To prevail in a slip-and-fall case, one must show either (1) that the presence of a foreign substance on the premises was the result of the owner's negligence or (2) that the foreign substance had been on the premises for such a length of time that the owner knew or reasonably should have known of its presence and failed to use ordinary care to remove it. *Cowan*, 93 Ark.App. at 143, 217 S.W.3d at 180. In virtually every case involving a fall, the plaintiff will describe a floor as slick or slippery; this alone is not sufficient to support a case for negligence. *Black v. Wal–Mart Stores, Inc.*, 316 Ark. 418, 872 S.W.2d 56 (1994); *Newberg v. Next Level Events, Inc.*, 82 Ark.App. 1, 110 S.W.3d 332 (2003). Possible causes of a fall, as opposed to probable causes, do not constitute substantial evidence of negligence. *Cowan*, 93 Ark.App. at 143, 217 S.W.3d at 180.

The first issue is whether there was evidence raising a material question of fact that the ⌊7floor was wet as a result of Stoby's negligence. First, there is no evidence that the floor was wet when Mr. Hendrix arrived at Stoby's. Ms. Frensko testified that the entryway floor was "all dry" when she put the rug down at 8:00. There was no testimony regarding precisely what time the Hendrixes arrived at Stoby's. Both Mr. and Mrs. Hendrix testified that, when they did arrive, the outside walk and area around the restaurant were extremely well cleared and well cared for. They both noted that there was salt residue on the steps. Mr. Stobaugh said that he had shoveled and that it was his primary responsibility that day to take care of the hazards involving snow. Mr. Hendrix testified that he was not certain exactly where he slipped, either on the wood threshold or the area between the threshold and the mat in the entryway. The only testimony that the floor was wet when Mr. Hendrix fell was by Mr. Hendrix. He said he knew that it was wet because of a six-inch wet patch on his shoulder and a small wet spot on his jeans. But his testimony does not make it clear whether he fell on the floor or the mat. He said that he did not know how wet the mat was. Furthermore, Mr. Hendrix offered no evidence that the slippery condition was not caused by his own boots. Mrs. Hendrix testified that she did not remember whether the rug was wet when she came in, although she noticed it was wet when they left. She did not notice whether her husband's clothing was wet. In conclusion, no testimony established that the floor was wet due to Stoby's negligence.

Moreover, Mrs. Stobaugh and Ms. Frensko both testified that there was a sign in the entryway warning of the wet floor. While their testimony differed as to when the sign was ⌊8placed in the entryway, they did not dispute that the sign was in the entryway when Mr. Hendrix arrived hours later. There was no testimony that the sign was not in the entryway when Mr. Hendrix fell. Mr. Hendrix said that he did not know if there was a sign when he fell but that there could have been. Mrs. Hendrix did not remember seeing any signs on the way in, though she did see a sign in the cash-register area when she left. She said she did not see a sign in the entryway when she left.

The second issue is whether there was evidence raising a genuine issue of material fact that the floor had been wet for such

a length of time that Stoby's knew or should have known that it was wet and failed to use ordinary care to remove the water. Once again, there is no evidence that the floor was not in a reasonably safe condition, that is, that there was sufficient water to make it dangerous. Further, Mr. Hendrix presented no testimony regarding how long the floor had been wet other than speculation. Finally, he presented no evidence to dispute Mrs. Stobaugh's testimony and Ms. Frensko's testimony that a sign in the entryway warned of a potentially wet floor when Mr. Hendrix arrived at Stoby's. As there is no evidence to establish that the floor was dangerously wet or that the floor remained this way without warning for a particular amount of time such that Stoby's should have known and failed to use ordinary care to address the problem, we must affirm.

Mr. Hendrix argues that this case does not fall within the typical slip-and-fall analysis but instead that the fall occurred because of a recurrent slippery condition in Stoby's and thus falls within the atypical cases such as *Brookshires Grocery Co. v. Pierce*, 71 Ark.App. 203, 29 ⌊₉S.W.3d 742 (2000), and *Conagra, Inc. v. Strother*, 68 Ark.App. 120, 5 S.W.3d 69 (1999). *See also Heigle v. Miller*, 332 Ark. 315, 965 S.W.2d 116 (1998). In those cases, the court held that "where the slippery condition is not the result of an isolated incident but is instead a recurring one, the traditional slip-and-fall analysis is inapplicable, and the question is simply whether the business owner used ordinary care to keep his premises free from dangerous conditions likely to cause injury to invitees." *Brookshires Grocery Co.*, 71 Ark.App. at 205, 29 S.W.3d at 743.

In *Brookshires*, the injured appellee slipped on a grape in appellant's store. There was evidence that appellee had noticed other produce on the floor in the produce section on prior shopping trips; that he drew the produce clerk's attention to two separate spills on the day he was injured, and the clerk seemed unconcerned; that store management was aware that the produce section was a particularly dangerous area for falls; that management had a schedule for inspection that was not adhered to; and that the clerk assigned to the produce area on the day appellee was injured was known to be "slouchy" and not diligent in cleaning up spilled items. We held that this was a recurrent slippery condition, and we affirmed a jury verdict in favor of appellee.

We also held that a recurrent slippery condition existed in *Conagra*, where testimony established that oils, grease, and water were regularly tracked to and throughout the hallway outside the employee breakroom where a USDA inspector fell; that Conagra had a longstanding policy of keeping nonskid safety mats in the area; that the cleaning crew were instructed not to remove the mats to clean until all employees were gone; and that the mats ⌊₁₀had been removed when the inspector left the breakroom and subsequently fell.

In this case, there was no evidence presented that water from tracked-in snow is a "recurrent slippery condition" at Stoby's. While there was evidence that Mr. Stobaugh knew that water would be tracked in on snowy days, which would make the entryway floor more hazardous, mats had been placed on the entryway floor for the purpose of absorbing water brought in by customers. Mr. Hendrix acknowledged that mats were on the floor. In *Conagra*, the mats had been removed, exposing the oils, grease, and water on the floor. Based on the evidence presented, and viewing this evidence in the light most favorable to the appellant, we cannot say that the evi-

dence established a "recurrent slippery condition."

Accordingly, we affirm the circuit court's order granting Stoby's motion for summary judgment and dismissing Mr. Hendrix's complaint.

Affirmed.

VAUGHT, C.J., and HART, J., agree.